UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PG PUBLISHING COMPANY, and )
BLOCK COMMUNICATIONS, INC., )
)
    Plaintiffs, )
)
    vs. )    Civil Action No. 2:20-cv-1222
)
PITTSBURGH COMMISSION ON )
HUMAN RELATIONS, )
)
    Defendant. )
)

## BRIEF IN SUPPORT
## OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Counsel for Defendant:

Lawrence D. Kerr, Esquire
PA I.D. No. 58635
Tremba, Kinney, Greiner & Kerr, LLC
302 West Otterman Street
Greensburg, PA  15601
lkerr@westpalawyers.com
Phone: 724-838-7600
Fax: 724-838-8870

Michael E. Kennedy, Esquire
PA I.D. No. 52780
Associate City Solicitor
City of Pittsburgh Department of Law
313 City-County Building, 414 Grant Street
Pittsburgh, PA 15219
michael.kennedy@pittsburghpa.gov
Phone: 412-255-2025

Mark R. Hamilton, Esq.
PA I.D. No. 29919
Tremba, Kinney, Greiner & Kerr, LLC
302 West Otterman Street
Greensburg, PA  15601
mhamilton@westpalawyers.com
Phone: 724-838-7600
Fax: 724-838-8870

Wendy Kobee, Esquire
PA I.D. No. 62916
Associate City Solicitor
City of Pittsburgh Department of Law
313 City-County Building, 414 Grant Street
Pittsburgh, PA 15219
wendy.kobee@pittsburghpa.gov
Phone: 412-255-2025

# TABLE OF CONTENTS

I.      INTRODUCTION

II.     LEGAL STANDARD

In accordance with this Court's chamber procedures, the Pittsburgh Commission will not restate the legal standard for a motion to dismiss under Federal Rule 12(b)(6).

III.    ARGUMENT AND AUTHORITIES

A.  The *Younger* abstention doctrine.

B.  Federal courts have consistently abstained under *Younger* from enjoining investigations by state human relations commissions.

C.  The procedural framework of the Pittsburgh Commission on Human Relations.

D.  The PG can assert its federal and state First Amendment argument during the proceeding before the Pittsburgh Commission.

E.  Courts routinely resolve race discrimination and retaliation cases involving news reporters.

IV. CONCLUSION

This Honorable Court should abstain from hearing this case.

## TABLE OF AUTHORITIES

### Cases

*Bhd. of Locomotive Engineers v. Com. of Mass. Comm'n Against Discrimination*, 695 F. Supp. 1321 (D. Mass. 1988) ................................................................................................................................... 7

*City of Philadelphia Tax Review Bd. v. Headley*,  585 A.2d 1170 (Pa. Cmwlth. 1991) ............................ 10

*Com. v. Pittsburgh Press Co.,* 396 A.2d 1187 (Pa. 1979) ................................................................... 10

*Cooper v. KSHB-TV 41*, 2018 WL 8131234 (W.D. Mo. Apr. 2, 2018) ...................................................... 11

*Devlin v. City of Philadelphia*, 862 A.2d 1234 (Pa. 2004) .................................................................... 8

*E.E.O.C. v. Kokh, LLC*, 2010 WL 3155900 (W.D. Okla. Aug. 9, 2010) .................................................. 12

*Fore Way Exp., Inc. v. State of Wis. Dep't of Indus., Labor & Human Relations*, 660 F. Supp. 310 (E.D. Wis. 1987) ........................................................................................................................................ 7

*Fund v. City of New York*, 2014 WL 2048204 (S.D.N.Y. May 19, 2014) .................................................. 6

*Geier v. Missouri Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) .......................................................... 6

*Gentlemen's Retreat, Inc. v. City of Philadelphia,* 109 F. Supp. 2d 374 (E.D.Pa.2000), *aff'd* 276 F.3d 577 (3d Cir. 2001) ................................................................................................................................. 10

*Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176 (3d Cir. 2014) ................................ 5

*Gray v. Viacom Broad., Inc.*, 1997 WL 508791(D. Conn. July 11, 1997) ............................................... 12

*Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir. 1992) .................. 2

*Hartman v. City of Allentown*, 880 A.2d 737 (Pa. Commw. Ct. 2005) .................................................... 8

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) ............................................................................. 12

*Hosanna–Tabor Evangelical Lutheran Church & School v. E.E.O.C.*, 565 U.S. 171 (2012) ..................... 2

*HSBC Bank USA, N.A. v. New York City Comm'n on Human Rights*, 673 F. Supp. 2d 210 (S.D.N.Y. 2009) .............................................................................................................................................. 6

*Ivy Club v. Edwards*, 943 F.2d 270 (3d Cir. 1991) ............................................................................. 5

*John E. Reid & Assocs., Inc. v. Illinois Human Rights Comm'n*, 740 F. Supp. 1314 (N.D. Ill. 1990) ......... 7

*Jones v. Delaware River Stevedores, Inc.,* 2019 WL 498517 (E.D. Pa. Feb. 7, 2019) .............................. 8

*Kurowski v. City of Washington*, 2014 WL 7213193 (W.D. Pa. Dec. 17, 2014) ...................................... 10

*Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) ...................................................................... 2

*Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392 (4th Cir. 1994) .............. 6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................................................. 12

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ..................................... 4

*Nat'l Wood Preservers, Inc., v. Com., Dep't of Envtl. Res.*,  414 A.2d 37 (Pa. 1980) ............................... 8

*Newcomer v. Civ. Serv. Comm'n of Fairchance Borough,*  515 A.2d 108 ( Pa. Cmwlth. 1986) ............... 10

*Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo*, 339 F. App'x 232 (3d Cir. 2009) ...................................................................................................................................... 4, 5

*Ohio Civil Rights Commission v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) .............................. 2, 3

*Our Lady of Guadalupe School* v. Morrissey-Berru, 140 S. Ct. 2049 (2020) ........................................... 2

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973) ......................... 10

*Prater v. City of Philadelphia*, 2020 WL 208928 (E.D. Pa. Jan. 14, 2020) ............................................ 10

*Pride v. World Publ'g Co.*, 126 F. App'x 923 (10th Cir. 2005) ............................................................. 11

*Redford v. KTBS, LLC*, 135 F. Supp. 3d 549 (W.D. La. 2015), *on reconsideration in part,*  2016 WL 552960 (W.D. La. Feb. 10, 2016) ...................................................................................................... 11

*Schall v. Joyce,* 885 F.2d 101 (3d Cir. 1989) ..................................................................................... 4

*Schuman v. Kean Univ.*, 2020 WL 3446314 (D.N.J. June 24, 2020)............................................5

*Shallenberger v. Allegheny Cty.*, 2020 WL 1465853 (W.D. Pa. Mar. 26, 2020)..........................2

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015) .................................................5

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)................................................................6

*Steele v. The Post-Tribune Co.*, 2007 WL 2533380 (N.D. Ind. Aug. 30, 2007)........................12

*Wattie-Bey v. Attorney General's Office*, 424 F. App'x 95, 96 (3d Cir. 2011) ..........................2

*Younger v. Harris*, 401 U.S. 37 (1971)........................................................ 2, 3, 4, 5, 6, 10, 13

## Statutes

42 U.S.C. § 1983 (West 2020)....................................................................................................1

2 Pa. Cons. Stat. Ann. §753 (West 2020) .............................................................................. 9, 10

42 Pa. Cons. Stat. Ann. § 5105(d)(1) (West 2020) ....................................................................9

42 Pa. Cons. Stat. Ann. § 724(a) (West 2020) ...........................................................................9

42 Pa. Cons. Stat. Ann. §762(a)(4)(ii) (West 2020)....................................................................9

43 Pa. Cons. Stat. Ann. § 955 (West 2020) ................................................................................8

43 Pa. Cons. Stat. Ann. § 957(f.1) (West 2020) .........................................................................8

43 Pa. Cons. Stat. Ann. § 962.1 (West 2020) .............................................................................8

43 Pa. Cons. Stat. Ann. § 962.1(d) (West 2020) ........................................................................7

## Other Authorities

Pittsburgh Home Rule Charter. Ord. 29-1980 (Dec. 31, 1980) ..................................................8

Pittsburgh, Pa., Municipal Code § 653.05(1)..............................................................................9

Rules and Regulations of City of Pittsburgh Commission on Human Relations Rule 17(h)(5).................9

Rules and Regulations of City of Pittsburgh Commission on Human Relations Rule 4 ............................9

Rules and Regulations of City of Pittsburgh Commission on Human Relations Rule 7(a),(c) ..................9

Rules and Regulations of City of Pittsburgh Commission on Human Relations Rule 9(f),(k)...................9

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PG PUBLISHING COMPANY, and BLOCK COMMUNICATIONS, INC., | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:20-cv-1222 |
| | ) | |
| PITTSBURGH COMMISSION ON HUMAN RELATIONS, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

## I. INTRODUCTION

On August 18, 2020, the PG Publishing Company and its parent corporation, Block Communications, Inc. (collectively "PG"), filed the attached complaint against the Pittsburgh Commission on Human Relations ("Pittsburgh Commission"). Exhibit A. Citing its federal and state rights to free speech in the form of editorial discretion, the complaint seeks declaratory and injunctive relief under 42 U.S.C. § 1983. The PG asks this Court to enjoin and dismiss the Pittsburgh Commission's investigation into reports of race discrimination and retaliation involving reporters of its newspaper, the Pittsburgh Post-Gazette.

All personnel actions taken by newspapers concerning its reporters involve some amount of editorial discretion, (i.e., "Is the reporter competent?  Did the reporter follow the workplace rules?"). The PG asks this District Court to prevent the Pittsburgh Commission from performing its statutory duty to investigate potential incidents of employment discrimination and, in so doing, to create an "editorial exemption" similar to the "ministerial exemption" established by

the Supreme Court in *Hosanna–Tabor Evangelical Lutheran Church & School v. E.E.O.C.*, 565

U.S. 171 (2012) and *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020).

The PG's complaint should be dismissed under the *Younger* abstention doctrine. *Younger*

*v. Harris*, 401 U.S. 37 (1971).

## II. LEGAL STANDARD

In accordance with this Court's chamber procedures, the Pittsburgh Commission will not

restate the legal standard for a motion to dismiss under Federal Rule 12(b)(6).[1]

## III. ARGUMENT AND AUTHORITIES

### A. The *Younger* abstention doctrine.

The *Younger* doctrine was recently characterized by this Court:

> The *Younger* abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Wattie-Bey v. Attorney General's Office*, 424 F. App'x 95, 96 (3d Cir. 2011) (quoting *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir. 1992)). "Accordingly, 'in certain circumstances, district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.'" *Id.* at 96-97 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010)).

*Shallenberger v. Allegheny Cty.*, 2020 WL 1465853, at *6 (W.D. Pa. Mar. 26, 2020).

### B. Federal courts have consistently abstained under *Younger* from enjoining investigations by state human relations commissions.

In *Ohio Civil Rights Commission v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986), the

Supreme Court decided that abstention was appropriate under *Younger* in view of an ongoing,

employment discrimination investigation by a state human relations commission. *Id.* Because

---

[1] As this Court noted in *Trump for President, Inc. v. Boockvar*, 2020 WL 4920952, at *5 (W.D. Pa. Aug. 23, 2020), it is not clear whether abstention motions are properly brough under Rule 12(b)(1) or 12(b)(6). In the event this Court determines 12(b)(1) is more appropriate, the Commission moves under it as an alternative theory.

*Dayton's* holding extended the *Younger* doctrine from its roots in criminal proceedings to investigations conducted by state human relation commissions, an examination of *Dayton's* facts is helpful.

In *Dayton,* a pregnant teacher at a church-run school filed a complaint with the Ohio Civil Rights Commission after the school had refused to renew her contract because of its view that mothers should stay home with their preschool children. The Ohio Commission concluded that there was probable cause to conclude that the school's conduct amounted to impermissible sex discrimination and, accordingly, initiated administrative proceedings against the school. The school asserted a defense under the First Amendment. At the same time, the school filed suit in federal court to enjoin the administrative action. The Supreme Court held that abstention was proper. The Court found that the *Younger* principles apply when there are state proceedings "in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." 477 U.S. at 620. The Court concluded that the state's interest in eliminating sex discrimination in employment was important, and that the availability of state judicial review ensured an adequate opportunity to raise constitutional issues. 477 U.S at 628–29.

Applying *Dayton*, the Pittsburgh Commission's investigation of potential race discrimination and retaliation involving the PG's reporters vindicates important state interests. Moreover, the PG will be able to litigate its federal and state First Amendment concerns during the proceedings before the Commission and, if need be, during state judicial review.

The Third Circuit has applied *Younger* and *Dayton* in cases in which employers and other organizations have attempted to enjoin investigations by state human relations commissions. For example, in *Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo*,

3

339 F. App'x 232, 236 (3d Cir. 2009), the District Court abstained from hearing an injunction

filed by a religious association that was being investigated by the New Jersey Division on Civil

Rights. The underlying complaints had been filed against the organization by two couples who

were denied access to the Association's boardwalk for the purpose of conducting their civil

unions.  Affirming the District Court, the Court of Appeals restated the criteria for and

exceptions to abstention:

> *Younger* abstention is appropriate when (1) there is a pending state proceeding that is
> judicial in nature, (2) the proceeding implicates important state interests, and (3) there is
> an adequate opportunity in the state proceeding for the plaintiff to raise its constitutional
> challenges. *Middlesex County Ethics Comm.,* 457 U.S. at 432, 102 S.Ct. 2515. When all
> three of these factors are met, abstention is proper unless "(1) the state proceedings are
> being undertaken in bad faith or for purposes of harassment or (2) some other
> extraordinary circumstances exist, such as proceedings pursuant to a flagrantly
> unconstitutional statute, such that deference to the state proceeding will present a
> significant immediate potential for irreparable harm to the federal interests
> asserted." *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir. 1989).

339 F. App'x at 236.

The *Ocean Grove* court rejected the Association's arguments that the state court

proceeding was not judicial in nature, did not implicate important state interests or did not afford

the Association an adequate opportunity to raise its constitutional claims because its federal

claims involved broader issues than those involved in the state proceeding.  Nor did the court

find that either of the *Younger* exceptions were met.  Citing language from *Younger* which is

particularly applicable to the Pittsburgh Commission's investigation, the *Ocean Grove* court

reasoned:

> [T]he DCR's exercise of its statutory mandate to investigate discrimination
> complaints cannot be construed as "bad faith," and the Association has not
> demonstrated that the DCR has conducted itself in a manner that shows any
> disrespect or disregard for federal or state laws.  Similarly, the Association did not
> establish the existence of "extraordinary circumstances."  This exception does not
> apply any time there is a chilling effect on the exercise of constitutional rights.
> *Younger*, 401 U.S. at 51, 91 S.Ct. 746 ("[T]he existence of a 'chilling effect,'

4

even in the area of the First Amendment rights, has never been a sufficient basis, in and of itself, for prohibiting state action.").

339 F. App'x at 239.

*Ocean Grove* is consistent with prior and subsequent Third Circuit caselaw involving attempts to enjoin investigations by state administrative agencies. *See, e.g.*, *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176 (3d Cir. 2014) (holding *Younger* abstention appropriate when former law enforcement officer sought to enjoin disciplinary proceedings by Waterfront Commission as a violation of his rights under Title VII, the ADA, and the First Amendment); *Ivy Club v. Edwards*, 943 F.2d 270, 279 (3d Cir. 1991) (noting in a sex discrimination complaint filed by female university students and being investigated by the New Jersey Division on Civil Rights: "Thus, in retrospect, with the additional guidance of *Dayton* and *Pennzoil,* it appears that abstention pursuant to the *Younger* doctrine would have been appropriate."); *Schuman v. Kean Univ.*, 2020 WL 3446314 (D.N.J. June 24, 2020) (abstaining from hearing injunction filed by university professor who complained that state civil service commission proceedings violated his rights under the First and Fourteenth amendments).

Courts in other jurisdictions have consistently abstained from entertaining requests to prevent state agencies from investigating allegations of discrimination. For example, in *Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015), the employer attempted to enjoin an administrative proceeding by the Massachusetts Commission Against Discrimination concerning an employee's claims that he had been discriminated against because of his disability. The employer contended ERISA preempted the administrative proceeding. In affirming the District Court's decision to abstain under the *Younger* doctrine, the *Sirva* court noted that the procedural process before the state commission was "materially indistinguishable" from that described in *Ohio Civil Rights Commission v. Dayton Christian School.* 794 F.3d at 193. The court further

noted that, "[w]hile the *Dayton* Court stated that the Ohio agency did not violate any constitutionally assured right simply by investigating the reason for the teacher's discharge [,] the Court left it for the agency to determine whether further inquiry would offend the First Amendment." 794 F.3d at 195.  After deciding that the Supreme Court's refinement of *Younger* and *Middlesex* in its later opinion *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) did not change the outcome when a state human relations commission was sought to be enjoined, the *Sirva* court held: "We need go no further. For the reasons elucidated above, we conclude that under *Sprint's* reformulation of the *Younger* doctrine, abstention is appropriate and no cognizable exception to abstention pertains. It follows inexorably, as night follows day, that the dismissal of this action must be affirmed." 794 F.3d at 200.

Numerous courts have abstained from enjoining investigations by state administrative agencies. *See, e.g.*, *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 680 (8th Cir. 2013) (noting "Merely invoking the First Amendment does not automatically exclude the application of the *Younger* abstention doctrine. To the contrary, this court has applied *Younger* abstention in cases raising First Amendment issues."); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392 (4th Cir. 1994) (citing *Younger*, court abstained from enjoining state human relations commission from investigating employee's disability claim); *Fund v. City of New York*, 2014 WL 2048204 at *1 (S.D.N.Y. May 19, 2014) (abstaining under *Younger* from hearing injunction filed by employer of sexual harassment victim whose administrative complaint was being heard by administrative law judge of the New York City Commission on Human Rights); *HSBC Bank USA, N.A. v. New York City Comm'n on Human Rights*, 673 F. Supp. 2d 210 (S.D.N.Y. 2009) (abstaining when bank brought action against city's human relations commission, seeking declaratory judgment that city code prohibiting employment

discrimination on the basis of applicant's arrest record was preempted by federal law to extent it prohibited them from denying employment to an applicant for a mortgage consultant position; under *Younger*); *John E. Reid & Assocs., Inc. v. Illinois Human Rights Comm'n*, 740 F. Supp. 1314 (N.D. Ill. 1990) (male polygraph examiner brought declaratory judgment action against Illinois Human Rights Commission seeking declaratory relief and injunction to prevent Commission from enforcing order that he turn over certain polygraph records beyond those relating to his examinations relating to person who brought a race discrimination action against him; court stated, even if it had jurisdiction, it would abstain under *Younger*); *Bhd. of Locomotive Engineers v. Com. of Mass. Comm'n Against Discrimination*, 695 F. Supp. 1321 (D. Mass. 1988) (abstaining under *Younger* when union brought action seeking to enjoin proceedings in Massachusetts Commission Against Discrimination on complaint of unlawful age discrimination); *Fore Way Exp., Inc. v. State of Wis. Dep't of Indus., Labor & Human Relations*, 660 F. Supp. 310 (E.D. Wis. 1987) (abstaining under *Younger* from hearing action for declaratory and injunctive relief after State Equal Rights Division determined there was probable cause to believe that employer had discriminated against employee on basis of handicap).

### C.    The procedural framework of the Pittsburgh Commission on Human Relations.

The statutory authority of the Pittsburgh Commission is similar to that of Pennsylvania Human Relations Commission ("PHRC"). The enabling Pennsylvania Human Relations Act ("PHRA") provides: "The legislative bodies of political subdivisions shall have the authority to grant to local commissions powers and duties similar to those now exercised by the Pennsylvania Human Relations Commissions under the provisions of this act." 43 Pa. Cons. Stat. Ann. § 962.1(d) (West 2020). *Jones v. Delaware River Stevedores, Inc.*, 2019 WL 498517, at *2 (E.D.

Pa. Feb. 7, 2019) (filing with local human relations commission satisfies prerequisites for PHRA).

Though the Pittsburgh Commission has operated for over 60 years, the current body was established by the Pittsburgh Home Rule Charter. Ord. 29-1980, eff. 12-31-80.  A municipality electing home rule possesses "authority to enact anti-discrimination laws pursuant to its police powers." *Devlin v. City of Philadelphia*, 862 A.2d 1234, 1248 (Pa. 2004).  Police power may be used "to respond in an appropriate and effective fashion to changing social, economic and political circumstances, and maintain its vitality and order." *Nat'l Wood Preservers, Inc., v. Com., Dep't of Envtl. Res.,*  414 A.2d 37, 42 (Pa. 1980).  The PHRC acknowledges the authority of a Home Rule municipality to enact protections against discrimination on the basis of classifications not expressly set forth in the state act. *Hartman v. City of Allentown*, 880 A.2d 737, 752 (Pa. Cmwlth. 2005) (finding "the PHRC, as *Amicus,* and the sole agency in charge of interpreting and enforcing the PHRA, stands by the Ordinance in support of added protections against discrimination on the basis of sexual orientation and gender identity").  The Pittsburgh Commission's investigation is consistent with the express authority granted under the PHRA. 43 Pa. Cons. Stat. Ann. § 955 (West 2020); 43 Pa. Cons. Stat. Ann. § 957(f.1) (West 2020); 43 Pa. Cons. Stat. Ann. § 962.1 (West 2020).

The Commission's regulatory provisions at §§ 651-659 of the Pittsburgh City Code are accessible online.[2]   Exhibit B. The Commission's rules of civil procedure can also be found online[3] and are entitled "Rules and Regulations of City of Pittsburgh Commission on Human Relations." Exhibit C ("Rules").

---

[2] Pittsburgh City Code, Article V Discrimination, §§ 651-659,
https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=COOR_TITSIXCO_ARTVDI_CH653HURECO
[3] "Rules and Regulations of City of Pittsburgh Commission on Human Relations", last amended March 3, 2020,
https://apps.pittsburghpa.gov/redtail/images/9384_Rules_and_Regulations_(March_2020)_-_COMPLETE.pdf

The Rules were promulgated pursuant to Pittsburgh City Code, Chapter 653.05(1), and are kept current (most recent amendment March 3, 2020).  They give parties extensive procedural due process to litigate defenses to claims under investigation by the Commission. They explicitly refer to the option for making a record of objections during the investigatory phase by motions for interlocutory, protective, and dispositive relief.  Rule 4; 7(a), (c); 9(k). An investigatory subpoena issued by the Commission is subject to review by the Court of Common Pleas prior to final agency action.  Rule 9(f). The Commission's final action is a matter of record, Rule 17(h)(5), which may be appealed to the Court of Common Pleas for review in accordance with local agency law:

> [a] party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

2 Pa. Cons. Stat. Ann. §753 (West 2020).

An adverse ruling by the Common Pleas Court may be appealed to the Commonwealth Court as a matter of right.  42 Pa. Cons. Stat. Ann. §762(a)(4)(ii) (West 2020).  An appeal to the Pennsylvania Supreme Court is by allowance of two (2) justices, and if granted, is on the whole record.  42 Pa. Cons. Stat. Ann. § 724(a) (West 2020); 42 Pa. Cons. Stat. Ann. § 5105(d)(1) (West 2020).

> **D. The PG can assert its federal and state First Amendment argument during the proceeding before the Pittsburgh Commission.**

Rather than exercising its rights under the Commission's Rules to address its concerns that the investigation impinged upon its editorial discretion, the PG filed suit in federal court.

Either the PG was unaware of its ability to seek redress under the Rules, or it was aware of that right but eschewed the Rules and asked this Court to presume the state court framework is incapable of adjudicating the issues.  Both scenarios fly in the face of *Younger*.

Decisional law shows the PG has the ability to litigate its constitutional arguments during the proceeding before the Pittsburgh Commission, and, if need be, during judicial review. *See, e.g.*, *Prater v. City of Philadelphia*, No. 19-CV-6218, 2020 WL 208928, at *3–4 (E.D. Pa. Jan. 14, 2020) (finding third prong of *Younger* is satisfied because, under Pennsylvania law, a plaintiff can litigate its constitutional claims during the judicial review of an administrative decision); *Kurowski v. City of Washington*, 2014 WL 7213193, at *5 (W.D. Pa. Dec. 17, 2014) (same); *Gentlemen's Retreat, Inc. v. City of Philadelphia,* 109 F. Supp. 2d 374, 380 (E.D.Pa.2000), *aff'd* 276 F.3d 577 (3d Cir. 2001) (same); *Newcomer v. Civ. Serv. Comm'n of Fairchance Borough,* 515 A.2d 108 (Pa. Cmwlth. 1986) (same); *City of Philadelphia Tax Review. Bd. v. Headley,* 585 A.2d 1170, 1172 (Pa. Cmwlth. 1991) (same); 2 Pa. Con. Stat. Ann. § 753 (West 2020).  Indeed, the PG once vindicated its right to editorial discretion through an appeal from the PHRC. *Com. v. Pittsburgh Press Co.,* 396 A.2d 1187 (Pa. 1979) (finding PG's editorial discretion found to be improperly restricted by statute prohibiting publication of advertisements for employment expressing race, color, religious creed, ancestry, age, sex, or national origin of advertiser).[4] The PG also used the Pittsburgh Commission's due process procedure to place its constitutional concerns before the United State Supreme Court. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973) (finding the municipal human relations ordinance which prohibited PG from carrying sex designated

---

[4] The PG purchased the Pittsburgh Press in 1993.

10

advertising columns for nonexempt job opportunities did not violate PG's First Amendment rights).

### E.  Courts routinely resolve race discrimination and retaliation cases involving news reporters.

The PG's complaint for equitable and declaratory relief sweepingly asserts that, since some tangent of editorial discretion might intersect with the Pittsburgh Commission's investigation, absolutely no investigation is permitted. But except for the unfortunate crosswinds which have inflamed the national discussion of race, there is nothing materially new about this case.  Federal courts have frequently resolved employment discrimination lawsuits involving reporters who have made allegations of race discrimination.

For example, in *Redford v. KTBS, LLC*, 135 F. Supp. 3d 549 (W.D. La. 2015), *on reconsideration in part,*  2016 WL 552960 (W.D. La. Feb. 10, 2016), a discharged, white male, television crime reporter brought action against a news station alleging he was discriminated against based on his race and sex.  He asserted claims under Title VII, § 1981, and related state law. As in the investigation before Pittsburgh Commission, the issue was whether he was discharged for violating the station's social media policy, specifically, Facebook posts. 135 F. Supp. 3d at 553–54. The trial court ultimately determined that he made a credible claim that his termination was pretextual because there was arguably no violation of the station's social media policy. 2016 WL 552960, at *4.

Several other courts have handled race discrimination lawsuits filed by reporters. *See, e.g.*, *Pride v. World Publ'g Co.*, 126 F. App'x 923 (10th Cir. 2005) (allowing claim by African-American news reporter who alleged he was denied promotion because of race discrimination rather than his lack of productivity); *Cooper v. KSHB-TV 41*, 2018 WL 8131234 (W.D. Mo. Apr. 2, 2018) (hearing claim by female African-American television reporter who filed a race

discrimination and retaliation complaint concerning why she had not been offered a position as an investigative reporter position, whether she had been retaliated against, and whether her editors had legitimate non-discriminatory reasons for offering the job to someone else); *E.E.O.C. v. Kokh, LLC*, 2010 WL 3155900 (W.D. Okla. Aug. 9, 2010) (addressing race and gender discrimination complaint by female African-American television reporter); *Steele v. The Post-Tribune Co.*, 2007 WL 2533380 (N.D. Ind. Aug. 30, 2007) (addressing race discrimination and retaliation claims by white female employee who contended she was a talented news reporter and deputy editor but was told by managers she would not be considered for an editor position because she was not African-American); *Gray v. Viacom Broad., Inc.*, 1997 WL 508791(D. Conn. July 11, 1997) (addressing race discrimination and retaliation claim by female African-American television reporter).  Under the PG's broad theory of editorial discretion, none of these lawsuits should have been investigated because an editor's right to make decisions about a reporter's job performance and story assignments can never be questioned, even if there is evidence of discrimination.

## IV. CONCLUSION

The Pittsburgh Commission asks this Court to consider the practical implications of what the PG seeks.  If an employee proves a prima facie case of discrimination, the burden of proof to articulate legitimate, nondiscriminatory reason for the adverse personnel decision shifts to the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).  However, an adoption of the PG's position would mean that, even if a reporter establishes a prima facie case, the burden of proof would never shift because editors must never be questioned about their decisions.

The PG seeks an editorial exemption pertaining to the federal and state First Amendments which could be applied to all employment discrimination cases involving news reporters. Decisional law does not support this position. However, the Pittsburgh Commission respectfully asks this Court to abstain from addressing this inquiry because, under *Younger*, *Dayton*, and their numerous progeny, the PG should instead attempt to resolve its concerns before the Commission and, if need be, during state court review rather than by suit in federal court.  Accordingly, the PG respectfully requests that the Commission's motion to dismiss under be granted for failure of the complaint to state a claim upon which relief can be granted.

Respectfully submitted,

By: /s/ Lawrence D. Kerr, Esq.
Lawrence D. Kerr, Esquire
PA I.D. No. 58635
Tremba, Kinney, Greiner & Kerr, LLC
302 West Otterman Street
Greensburg, PA  15601
lkerr@westpalawyers.com
Phone: 724-838-7600
Fax: 724-838-8870


By: /s/ Mark R. Hamilton, Esq.
Mark R. Hamilton, Esquire
PA I.D. No. 29919
Tremba, Kinney, Greiner & Kerr, LLC
302 West Otterman Street
Greensburg, PA  15601
mhamilton@westpalawyers.com
Phone: 724-838-7600
Fax: 724-838-8870


By: /s/ Michael E. Kennedy, Esq.
Michael E. Kennedy, Esquire
PA I.D. No. 52780
Associate City Solicitor
City of Pittsburgh Department of Law
414 Grant Street, Suite #313

Pittsburgh, PA 15219
michael.kennedy@pittsburghpa.gov
Phone: 412-255-2025

By: /s/ Wendy Kobee, Esq.
Wendy Kobee, Esquire
PA I.D. No. 62916
Associate City Solicitor
City of Pittsburgh Department of Law
414 Grant Street, Suite #313
Pittsburgh, PA 15219
wendy.kobee@pittsburghpa.gov
Phone: 412-255-2025

14