**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| PG PUBLISHING COMPANY, and BLOCK COMMUNICATIONS, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:20-cv-1222 |
| PITTSBURGH COMMISSION ON HUMAN RELATIONS, | ) ) ) ) | |
| Defendant. | ) ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.      LEGAL STANDARD ............................................................................................... 3

II.     YOUNGER ABSTENTION IS NOT WARRANTED IN THIS CASE ............................ 3

        A.     *Younger's* Narrow Exception to Federal Jurisdiction Should Not Be
Invoked to Salvage State Proceedings That Inherently Threaten Federal
Constitutional Rights .................................................................................... 4

             1.    Abstention is the Exception, Not the Rule .................................... 4

             2.    Proceeding With the PCHR Investigation Would Violate the Post-
Gazette's Right to Editorial Autonomy ........................................ 5

             3.    Abstention is Inappropriate Where the State Proceeding Threatens
to Infringe Constitutional Rights ................................................. 8

        B.     None of the *Middlesex* Factors are Met ...................................................... 10

             1.    The PCHR Proceeding is Not an Ongoing State Judicial
Proceeding .................................................................................... 10

             2.    Investigating the Post-Gazette's Editorial Policies Does Not
Implicate Any Important State Interest ......................................... 14

             3.    The PCHR Proceeding Does Not Provide an Adequate Opportunity
to Raise Constitutional Defenses .................................................. 16

CONCLUSION ................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ampersand Publ'g, LLC v. NLRB*,
    702 F.3d 51 (D.C. Cir. 2012) ................................................................................................14

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000) ................................................................................................................8

*Bursey v. United States*,
    466 F.2d 1059 (9th Cir. 1972) ...........................................................................................9, 17

*Claybrooks v. Am. Broad. Cos., Inc.*,
    898 F. Supp. 2d 986 (M.D. Tenn. 2012) ..................................................................................8

*Colorado River Water Cons. Dist. v. United States*,
    424 U.S. 800 (1976) .................................................................................................................4

*Cooper v. KSHB-TV 41*,
    2018 WL 8131234 (W.D. Mo. Apr. 2, 2018) .........................................................................16

*EEOC v. KOKH, LLC*,
    2010 WL 3155900 (W.D. Okla. Aug. 9, 2010) ......................................................................16

*Fink v. Supreme Ct. of Pa.*,
    651 F. Supp. 1238 (M.D. Pa. 1987) .......................................................................................17

*Fund v. City of N.Y.*,
    2014 WL 2048204 (S.D.N.Y. May 19, 2014) ........................................................................12

*Gentlemen's Retreat, Inc. v. City of Phila.*,
    109 F. Supp. 2d 374 (E.D .Pa. 2000), *aff'd*, 276 F.3d 577 (3d Cir. 2001)..............................18

*Gonzalez v. Waterfront Comm'n of N.Y. Harbor*,
    755 F.3d 176 (3d Cir. 2014)....................................................................................................12

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) ..................................................................................................13

*Gray v. Viacom Broad., Inc.*,
    1997 WL 508791 (D. Conn. July 11, 1997) ...........................................................................16

*Guillemard-Ginorio v. Contreras-Gómez*,
    585 F.3d 508 (1st Cir. 2009)....................................................................................................13

*Heritage Farms, Inc. v. Solebury Twp.*,
  671 F.2d 743 (3d Cir. 1982)..................................................................................3

*HSBC Bank USA, N.A. v. N.Y. City Comm'n on Human Rights*,
  673 F. Supp. 2d 210 (S.D.N.Y. 2009)..................................................................12

*Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*,
  515 U.S. 557 (1995)..............................................................................................7

*Ivy Club v. Edwards*,
  943 F.2d 270 (3d Cir. 1991)................................................................................12

*Kurowski v. City of Wash.*,
  2014 WL 7213193 (W.D. Pa. Dec. 17, 2014).......................................................18

*La. Debating & Literary Ass'n v. City of New Orleans*,
  42 F.3d 1483 (5th Cir. 1995) .................................................................10, 11, 12

*Lee v. Winston*,
  551 F. Supp. 247 (E.D. Va. 1982), *aff'd in relevant
  part, rev'd in part*, 717 F.2d 888 (4th Cir. 1983)...............................................17

*Major League Baseball v. Butterworth*,
  181 F. Supp. 2d 1316 (N.D. Fla. 2001), *aff'd on other grounds sub nom.
  Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003)...........................13

*Martin Marietta Corp. v. Md. Comm'n on Human Relations*,
  38 F.3d 1392 (4th Cir. 1994) ..............................................................................12

*McClellan v. Cablevision of Conn., Inc.*,
  149 F.3d 161 (2d Cir. 1998)..................................................................................8

*McDermott v. Ampersand Publ'g LLC*,
  593 F.3d 950 (9th Cir. 2010) ................................................................................7

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974)..........................................................................................1, 7

*Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)..................................................................................... *passim*

*Mulholland v. Marion Cty. Election Bd.*,
  746 F.3d 811 (7th Cir. 2014) ........................................................................10, 13

*Nat'l R.R. Passenger Corp. v. Pa. PUC*,
  159 F. Supp. 2d 28 (E.D. Pa. 2001) .....................................................................19

*Newspaper Guild of Greater Philadelphia, Local No. 10 v. NLRB*,
    636 F.2d 550 (D.C. Cir. 1980) ...................................................................................14, 15

*Ocean Grove Camp Meeting Ass'n of United
    Methodist Church v. Vespa-Papaleo*,
    339 F. App'x 232 (3d Cir. 2009) .......................................................................................12

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
    477 U.S. 619 (1986)...................................................................................................10, 12

*Olde Discount Corp. v. Tupman*,
    1 F.3d 202 (3d Cir. 2001)..................................................................................................19

*PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Deployment*,
    --- F.3d ---, 2020 WL 6192954 (3d Cir. Oct. 22, 2020).........................................5, 13

*Phelps v. Wichita Eagle-Beacon*,
    886 F.2d 1262 (10th Cir. 1989) ..........................................................................................8

*Pitt. Press Co. v. PCHR*,
    413 U.S. 376 (1973)....................................................................................................18, 19

*Prater v. City of Phila.*,
    2020 WL 208928 (E.D. Pa. Jan. 14, 2020)......................................................................18

*Pride v. World Publ'g Co.*,
    126 F. App'x 923 (10th Cir. 2005) ...................................................................................16

*Redford v. KTBS, LLC*,
    2016 WL 552960 (W.D. La. Feb. 10, 2016).....................................................................16

*Redgrave v. Boston Symphony Orchestra, Inc.*,
    855 F.2d 888 (1st Cir. 1988)...............................................................................................8

*Rivoli v. Gannett Co.*,
    327 F. Supp. 2d 233 (W.D.N.Y. 2004) ...............................................................................7

*Schuman v. Kean Univ.*,
    2020 WL 3446314 (D.N.J. June 24, 2020) .......................................................................12

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)................................................................................................................1

*Sirva Relocation, LLC v. Richie*,
    794 F.3d 185 (1st Cir. 2015)..............................................................................................12

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)............................................................................................................4, 5

*Steele v. Post-Tribune Co.*,
   2007 WL 2533380 (N.D. Ind. Aug. 30, 2007)........................................................................16

*Sullivan v. City of Pitts.*,
   811 F.2d 171 (3d Cir. 1987)......................................................................................................18

*Telco Commc'ns, Inc. v. Carbaugh*,
   885 F.2d 1225 (4th Cir. 1989) ........................................................................ *passim*

*Telescope Media Grp. v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) .....................................................................................................8

*Trump for President, Inc. v. Boockvar*,
   --- F. Supp. 3d ---, 2020 WL 4920952 (W.D. Pa. Aug. 23, 2020)............................................3

*University of Pennsylvania v. EEOC*,
   493 U.S. 182 (1990)..............................................................................................................9, 10

*Wells Fargo Bank, N.A. v. Carnell*,
   2017 WL 1498087 (W.D. Pa. Apr. 25, 2017)............................................................................3

*Younger v. Harris*,
   401 U.S. 37 (1971).......................................................................................... *passim*

*Zwickler v. Koota*,
   389 U.S. 241 (1967).....................................................................................................................1

## State Cases

*City of Phila. Tax Review. Bd. v. Headley*,
   585 A.2d 1170 (Pa. Cmwlth. 1991) ........................................................................................18

*Com. v. Pitts. Press Co.*,
   396 A.2d 1187 (Pa. 1979) ...................................................................................................18, 19

*Nelson v. McClatchy Newspapers, Inc.*,
   936 P.2d 1123 (Wash. 1997)......................................................................................................7

*Newcomer v. Civ. Serv. Comm'n of Fairchance Borough*,
   515 A.2d 108 (Pa. Cmwlth. 1986) ..........................................................................................18

## Constitutional Provisions

U.S. Const. amend. I ....................................................................................................... *passim*

## State Statutes

Pitts. City Code, ch. § 653.05 ......................................................................................................17

Pitts. City Code, ch. § 655.04(d)..........................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................................3

Fed. R. Civ. P. 12(b)(6)........................................................................................................3

**Other Sources**

*Johnson v. PG Publ'g Co.*,
    No. 2:20-cv-00885-NR (W.D. Pa. filed Oct. 16, 2020).......................................................4, 14

## INTRODUCTION

The inquiry initiated against the Pittsburgh Post-Gazette ("Post-Gazette")[1] by the Pittsburgh Commission on Human Relations ("PCHR"), by its own words, seeks to parse and potentially punish the editorial discretion and judgment of the newspaper.  Compl. Ex. 1 ¶¶ 2-3.  However, a publisher's right to control its own editorial content is protected by the First Amendment, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974), and "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."  *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n.14 (1983).  Accordingly, abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is neither required nor appropriate in this case.

As set forth in the Complaint, the PCHR proceeding would force the Post-Gazette to justify its editorial prerogatives to the government, including how to assign reporters to particular stories, and what journalistic policies and standards to apply in its newsroom.  It is a direct state inquiry into a newspaper's editorial process – albeit cloaked as an employment discrimination allegation – which is patently unconstitutional, and fails to satisfy the criteria for abstention under *Younger*.  In this context, the ability to mount a First Amendment defense at the Commission, and to possibly get a favorable ruling in the end, does not adequately protect the Post-Gazette's First Amendment Rights.  As the Supreme Court has long held, "abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." *Zwickler v. Koota*, 389 U.S. 241, 251 (1967).

To be clear, it is *not* the Post-Gazette's position that newspapers and newspaper publishers are immune from generally applicable laws, including antidiscrimination laws, in their employ-

---

[1]  The Post-Gazette is published by Plaintiff PG Publishing Company, a Pennsylvania corporation.  For reasons that are unclear, the PCHR also named the Post-Gazette's parent company Block Communications, Inc., an Ohio corporation as a respondent.  Plaintiffs are collectively referred to throughout this Opposition as the "Post-Gazette."

ment decisions, as the Commission's Motion asserts. *See* Mot. to Dismiss ("Def. Mot.") 11-12. Instead, the Post-Gazette argues that, in this particular case, PCHR insistence on investigating matters that focus *entirely* on the paper's editorial choices, and which seek to punish or direct editorial decision-making, goes beyond what the First Amendment permits. This unique focus makes this case extraordinary – and easy to distinguish from others involving the media and employment discrimination claims, in that there is no adverse employment action alleged to have been taken against any of the Post-Gazette's employees. Absent federal intervention, the Post-Gazette will be unable to effectively challenge the PCHR proceeding and unprecedented inquiry into its editorial choices, which is itself the instrument by which the Post-Gazette's constitutional rights are being infringed.

## BACKGROUND

The Post-Gazette filed this federal civil rights action to forestall governmental supervision of its editorial policies. Compl. ¶¶ 1, 48-56. The PCHR had initiated an investigation of the Post-Gazette after an African-American reporter alleged she did not get story assignments she requested after she had engaged in social media activity to express her personal views on the issues she wanted to cover. The PCHR complaint also suggests other staff members who "tweeted a hashtag in support of the [African American] journalists have had stories deleted or altered on the Post-Gazette website," and that an African American photographer was "disallowed" from covering George Floyd protests "after tweeting the support hashtag." *Id*. ¶¶ 48-49 & Ex. 1. The PCHR complaint does not allege that either the reporter who posted the original tweet, nor any of the Post-Gazette staff members, were reprimanded, lost pay or other job benefits, or were terminated. *Id*. ¶¶ 34-38, 47. Rather, the PCHR seeks to investigate "adverse treatment" generally, consisting of the failure to get a requested assignment. The sole focus of the PCHR investigation centers on the Post-Gazette's ability to make editorial decisions and to

2

enforce a social media policy which provides that reporters who inject personal views into a public controversy may limit their ability to act as reporters on that issue. *Id*. ¶¶ 25-33.

## ARGUMENT

### I.   LEGAL STANDARD

As did Defendant, Plaintiff forgoes restating the legal standard for a motion to dismiss under Rule 12(b)(6) pursuant to this Court's chamber procedures. Also like Defendant, Plaintiff recognizes there is some disagreement among courts regarding whether to apply Rule 12(b)(6), Rule 12(b)(1), or neither, on motions requesting abstention. *See Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ---, 2020 WL 4920952, at *5 (W.D. Pa. Aug. 23, 2020) (citing cases where varying standards were applied). However, application of the Rule 12(b)(6) standard in this case is appropriate and consistent with this Court's decision in *Wells Fargo Bank, N.A. v. Carnell*, 2017 WL 1498087 (W.D. Pa. Apr. 25, 2017). There, the court applied Rule 12(b)(6) rather than the Rule 12(b)(1) standard on a motion to dismiss invoking the *Younger* abstention doctrine because, "when a court abstains from exercising jurisdiction this necessarily means that the court *has* jurisdiction." 2017 WL 1498087, at *3. *See also Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 745 (3d Cir. 1982) ("a dismissal (without retention of jurisdiction) on abstention grounds is in the nature of a dismissal under Fed.R.Civ.P. 12(b)(6)").

### II.   YOUNGER ABSTENTION IS NOT WARRANTED IN THIS CASE

Defendant PCHR asks the Court to dismiss the case under the *Younger* abstention doctrine, arguing that this federal civil rights action would interfere with an ongoing state administrative proceeding that implicates important state interests. Def. Mot. 2. The Commission maintains that the Post-Gazette's First Amendment rights will not be affected by dismissal because it may "litigate its constitutional claims during the judicial review of an administrative decision." *Id*.

3

10.  It claims abstention is required because allowing the federal claims to proceed would create an exemption for "all employment discrimination cases involving news reporters." *Id*. 13.

The Commission mischaracterizes the issues in this case, and in so doing, fails to appreciate why abstention is inappropriate.  The Complaint does not challenge all discrimination cases that may involve reporters, but focuses on the specific situation here, where the government seeks to probe – and potentially sanction – the pure exercise of editorial judgment.  In this particular context, the investigation itself intrudes on constitutionally protected interests.  To allow state proceedings to play out would abdicate federal judicial authority.  None of the factors courts use to determine when abstention is required apply here:  There is no "ongoing proceeding" at a sufficiently advanced stage to warrant abstention, nor a legitimate state interest in governmental supervision of the editorial process, and state procedures will not adequately protect First Amendment rights.  Moreover, abstention is singularly inapt in this case for an independent reason:  This Court will address the essential merits of the Post-Gazette's constitutional claims in a companion case.  *See* Motion to Dismiss, *Johnson v. PG Publ'g Co.*, No. 2:20-cv-00885-NR (W.D. Pa. filed Oct. 16, 2020).  Accordingly, awaiting the outcome of state administrative proceedings before addressing the constitutional claims would be pointless, and wasteful.

> ### A. *Younger's* Narrow Exception to Federal Jurisdiction Should Not Be Invoked to Salvage State Proceedings That Inherently Threaten Federal Constitutional Rights
>
> #### 1. Abstention is the Exception, Not the Rule

*Younger* abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813 (1976),  Where it has jurisdiction, "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Cons. Dist.*, 424 U.S. at 817).  "Parallel state

court proceedings," or, as in this case, local administrative proceedings, "do not detract from that obligation." *Id.*

The Supreme Court has held *Younger* abstention applies in only "three 'exceptional circumstances' … but no further:" (1) ongoing state criminal prosecutions; (2) civil enforcement proceedings "akin to a criminal prosecution;" and (3) "civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78-79, 81-82. After narrowing potential abstention just to these three categories, the Court made clear that abstention was not necessarily required even within this limited domain. *Id*. at 78. If a proceeding is of the type to which *Younger may* apply, a court then looks to factors set forth in *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), to determine whether it *should* abstain. *Id*. at 81. *PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Deployment*, --- F.3d ---, 2020 WL 6192954, at *6 (3d Cir. Oct. 22, 2020) ("if we conclude the civil proceeding here was quasi-criminal in nature, we must then consider the *Middlesex* factors"). These include whether proceedings: (1) "constitute an ongoing state judicial proceeding," (2) "implicate important state interests," and (3) offer an "adequate opportunity … to raise constitutional challenges." *Middlesex*, 457 U.S. at 432.

Here, the PCHR proceeding may qualify as a state civil enforcement proceeding within the meaning of *Younger*, but, as explained below, none of the *Middlesex* factors support abstaining in this case. At the threshold, however, abstention should be rejected for a more basic reason: Allowing the local proceeding to continue would infringe federal constitutional rights.

### 2. Proceeding With the PCHR Investigation Would Violate the Post-Gazette's Right to Editorial Autonomy

PCHR asks this Court to abstain from considering the Post-Gazette's constitutional claims in order to preserve its "statutory duty to investigate potential incidents of employment

discrimination." Def. Mot. 1. It argues that allowing the case to go forward would interfere with its statutory obligations because "[a]ll personnel actions taken by newspapers concerning its reporters involve some amount of editorial discretion," and the Court should not create an "editorial exception" to antidiscrimination laws. *Id.* This generalized statement of the issues fails to identify specifically what is at stake here: the degree to which PCHR claims authority over a newspaper's *particular* editorial decisions despite the absence of any identifiable adverse employment action as to any of its employees.

This case is not about hiring decisions, terminations, workplace harassment or any other aspect of antidiscrimination law. It raises the sole question of whether a local government body may police newspaper editors' application of journalistic standards in making story assignments. It is not seeking to regulate just "some tangent of editorial discretion," as the Commission would have it, *id.* 11, but is intent on probing and potentially penalizing the specific editorial decisions themselves. Or, to paraphrase the PCHR, it is exerting authority over "*[a]ll personnel actions taken by newspapers concerning [their] reporters*," by conflating editing with "personnel actions." *Id.* 1 (emphasis added). In PCHR's expansive view, any time that discrimination is alleged, it would have authority to resolve disputes between reporters and editors about how particular stories may be edited or assigned. And to resolve those disputes, it requires authority to gather any information about how editorial decisions were made and to assess the newspaper's reasons for making them.

In this context, allowing the PCHR investigation to continue necessarily violates the Post-Gazette's constitutional rights. A newspaper's decision on what stories to cover, which reporters to assign, and how those stories are edited, are matters of editorial judgment protected by the free press provisions of the United States and Pennsylvania Constitutions. The Supreme

6

Court has made clear these First Amendment guarantees have "no more certain antithesis" than to allow government to intrude on editorial decisions, even where the state is seeking to enforce antidiscrimination statutes where "the ultimate point of forbidding acts of discrimination toward certain classes is to produce a society free of the corresponding biases." *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 578-79 (1995).

The Court in *Hurley* held unanimously that the First Amendment barred the government from applying Massachusetts' public accommodation law to require the private organizers of Boston's St. Patrick's Day parade to include a gay contingent.  The Court drew on precedent upholding the rights of newspaper publishers, citing *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974).  *Hurley*, 515 U.S. at 575.  *Tornillo*, another unanimous ruling, made clear that:

> The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time.

418 U.S. at 258.

In this regard, the First Amendment protects a publisher's choice of which writers to assign to cover stories.  *McDermott v. Ampersand Publ'g LLC*, 593 F.3d 950, 962 (9th Cir. 2010) ("To the extent the publisher's choice of writers affects the expressive content of its newspaper, the First Amendment protects that choice."); *Nelson v. McClatchy Newspapers, Inc.*, 936 P.2d 1123, 1131 (Wash. 1997) (*en banc*) ("Editorial integrity and credibility are core objectives of editorial control and thus merit protection under the free press clauses" of the First Amendment; as such, statutes prohibiting discrimination based on an employee's political positions must yield to the news organization's First Amendment right to control assignment of reporters).  *See also Rivoli v. Gannett Co.*, 327 F. Supp. 2d 233, 241 (W.D.N.Y. 2004) ("*Gannett* has a First

7

Amendment right to determine the contents of its own publications."); *McClellan v. Cablevision of Conn., Inc.*, 149 F.3d 161, 167 n.12 (2d Cir. 1998) ("[A] newspaper publisher has a First Amendment right to control the editorial content of the newspaper."); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1271 (10th Cir. 1989) ("[T]he act of publication and the exercise of editorial discretion concerning what to publish are protected by the First Amendment.").

Where a local governmental proceeding inherently intrudes on the direct exercise of editorial prerogatives, antidiscrimination law must give way. *See Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019) ("Even antidiscrimination laws, as critically important as they are, must yield to the Constitution. And as compelling as the interest in preventing discriminatory conduct may be, speech is treated differently under the First Amendment."); *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 996 (M.D. Tenn. 2012) (First Amendment bars discrimination claims arising from casting decisions for a television show because "anti-discrimination statutes of general applicability must yield to the First Amendment"). *See also Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000) ("[T]he First Amendment prohibits the State from imposing [an inclusion] requirement through … its public accommodations law.").[2]

### 3. Abstention is Inappropriate Where the State Proceeding Threatens to Infringe Constitutional Rights

This Court should deny PCHR's motion invoking abstention where allowing the local proceeding to continue would inherently conflict with the Post-Gazette's constitutional rights. The Fourth Circuit rejected *Younger* abstention in just such a circumstance in *Telco Commc'ns,*

---

[2] *Cf. Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988) (*en banc*), where The First Circuit held the Massachusetts Civil Rights Act could not be enforced to require the Boston Symphony Orchestra to stage a performance of Stravinsky's *Oedipus Rex* or pay damages for non-performance. The court was concerned that enforcing the law in a way that second-guessed artistic decisions would intrude on freedom of expression. The court was "unable to find any case, involving the arts or otherwise, in which a state has been allowed to compel expression," and noted that doing so would be "completely unprecedented." *Id*. at 906.

*Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989).  In that case, state enforcement proceedings had been initiated against Telco Communications to investigate alleged violations of various provisions of Virginia's charitable solicitation laws.  One such provision mandated that a solicitor file with the Office of Consumer Affairs a copy of the script of any oral solicitation at least ten days prior to the commencement of a solicitation campaign.  *Id*. at 1226-28.  The court found that enforcement of the provision would be an unconstitutional prior restraint of protected speech, *id*. at 1229, 1233, and that "the district court did not err in entertaining jurisdiction in the face of the clear constitutional violation."  *Id*. at 1228, 1230.  In such a circumstance, allowing the state proceeding to go forward would "convert[] a doctrine of comity into a blanket permission for the prolonged commission of unconstitutional acts.  It would allow any state agency to persist in conduct that is patently unconstitutional."  *Id*. at 1229.

This is not a circumstance were the constitutional violation will be manifest only once the local proceeding is completed and the governmental body imposes some penalty (although the violation clearly would be evident at that point).  Rather, the investigation itself would intrude deeply into First Amendment interests.  *See*, *e.g*., *Bursey v. United States*, 466 F.2d 1059, 1084-85 (9th Cir. 1972) ("[q]uestions about the identity of persons … responsible for the editorial content and distribution of a newspaper … cut deeply into press freedom.  Two basic ingredients of press freedom are liberty to decide what to print and to distribute what is printed.").

The Supreme Court's decision in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), is not to the contrary.  There, the Court held the First Amendment did not provide an "academic freedom" privilege against responding to a subpoena seeking peer review and personnel files in a case alleging discriminatory denial of tenure and sexual harassment.  *Id*. at 198-200.  In reaching this conclusion, the Court distinguished the impact of a demand for background

9

information on promotion deliberations as "remote," "extremely attenuated," and "speculative" when compared to "*direct* infringements on the asserted right to 'determine for itself on academic grounds who may teach.'" *Id*. (citation omitted).[3]  Thus, *University of Pennsylvania v. EEOC* does not support conducting an investigation like this one, where the government seeks to investigate editorial decisions ***and nothing else***. *Id*. at 199 ("courts have stressed the importance of avoiding second-guessing of legitimate academic judgments").  Here, PCHR is not attempting to investigate hiring, firing or tenure decisions, but seeks to determine whether *editorial decisions themselves* were a violation of local law.  The question the PCHR wants to pursue is whether the Post-Gazette should have made *different editorial choices*.[4]

### B.        None of the *Middlesex* Factors are Met

#### 1.        The PCHR Proceeding is Not an Ongoing State Judicial Proceeding

Abstention also is inappropriate in this case because the PCHR proceeding does not qualify as an "ongoing state judicial proceeding." *Middlesex*, 457 U.S. at 432.  The proceeding is at too preliminary a stage to warrant federal deference.  "[A] federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun," *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014), or "a state bureaucracy has initiated contact with a putative federal plaintiff." *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995) (citation omitted).

---

[3]  The investigation there did not violate the First Amendment because the "petitioner [did] not allege that the Commission's subpoenas are intended to or will in fact direct the content of university discourse toward or away from particular subjects or points of view."  493 U.S. at 198.

[4]  That fact also distinguishes this case from *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986), where the state agency was investigating the discharge of a teacher.  This case involves no discharge, demotion, reprimand or any other adverse employment action – just editorial judgment.

10

The PCHR proceeding is in its nascent stage.  Other than the Commission issuing a complaint, and the Post-Gazette submitting a position statement and answer in response, there have been no other proceedings, administrative hearings, or findings.  PCHR has not yet made a probable cause determination, and may only do so after staff completes its investigation.  Pitts. City Code, Chapter 655.04(d) ("If the Commission determines after investigation that probable cause exists for the allegations made in the complaint, it shall attempt to eliminate the unlawful practice by means of conferences, meetings or conciliation with all parties.").

The Fourth Circuit looked at similar facts in *Carbaugh* and concluded "the period between the threat of enforcement and the onset of formal enforcement proceedings may be an appropriate time for a litigant to bring its First Amendment challenges in federal court."  885 F.2d at 1229.  In that case, the state agency had filed a complaint alleging prohibited conduct, commenced an investigation, and held an informal fact-finding conference, which Telco Communications attended.  *Id*. at 1227.  After the conference, Telco sought federal court protection against further action by the state agency on grounds that Virginia's charitable solicitation laws infringed on its rights of free speech.  *Id*.  The district court declined to abstain at such an early stage in the state proceedings, and the Fourth Circuit agreed.  *Id* at 1229.

The Fifth Circuit likewise upheld the district court's decision denying abstention in *Louisiana Debating*, 42 F.3d at 1490.  There, the Human Relations Commission had notified four clubs of complaints alleging discrimination and requested a response.  *Id*. at 1487, 1490. The clubs filed an action in federal court requesting declaratory and injunctive relief.  *Id*. at 1488.  As in *Carbaugh*, the district court denied abstention and the Fifth Circuit affirmed because of the early stage of the proceedings.  *Id*. at 1490-91.  It distinguished *Dayton Christian Schools* and *Middlesex*, where the regulating agencies had investigated the allegations, made

11

determinations of probable cause, and served formal charges.  "In short, the state action had progressed significantly beyond that here." *Id*. at 1490.

Although PCHR cites various cases for the proposition that federal courts consistently have abstained under *Younger* from enjoining investigations, Def. Mot. 2-7, the proceedings in those cases were much further along than the one here.  In *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 178 (3d Cir. 2014), for example, the state proceeding had already advanced to the hearing stage.  *Id*. at 183.  In *Dayton Christian Schools*, 477 U.S. at 624, the Commission had already investigated allegations of discrimination, made a probable cause determination, and sent the religious school a proposed Agreement and Consent Order by the time the school sought federal court intervention.  The same is true of the other cases PCHR cites to support abstention.[5]

The Commission places primary reliance on the Third Circuit's unpublished (and non-precedential) decision in *Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo*, 339 F. App'x 232 (3d Cir. 2009).  Def. Mot. 4-5.  However, to whatever extent *Ocean Grove* ever had any precedential value, it has been superseded by the Third Circuit's most

---

[5]  *See, e.g.*, *Ivy Club v. Edwards*, 943 F.2d 270 (3d Cir. 1991) (final decision and order had been entered in administrative proceeding); *Schuman v. Kean Univ.*, 2020 WL 3446314 (D.N.J. June 24, 2020) (plaintiff had already submitted statement as part of University's underlying internal affairs investigation, and appealed its disciplinary determination to the N.J. Civil Service Commission, as well as the N.J. Superior Court, where it remained pending); *Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015) (Massachusetts Commission Against Discrimination had completed investigation, issued a formal complaint, conducted a pre-hearing conference, and scheduled an adjudicative hearing.); *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392 (4th Cir. 1994) (state human relations commission had found probable cause and filed an administrative complaint); *Fund v. City of N.Y.*, 2014 WL 2048204 (S.D.N.Y. May 19, 2014) (plaintiff had already responded to state human rights commission complaint, parties had already submitted documentary evidence, enforcement division had conducted investigation, parties had participated in a fact-finding hearing, and ALJ had also issued a report and recommendation); *HSBC Bank USA, N.A. v. N.Y. City Comm'n on Human Rights*, 673 F. Supp. 2d 210 (S.D.N.Y. 2009) (state human rights commission had issued notice of probable cause finding and scheduled administrative trial prior to the plaintiff filing suit in federal court).

recent holding on *Younger* abstention, issued just last week.  In *PDX North, Inc.*, the court clarified what it means for a state proceeding to be "ongoing" by abstaining in one case involving the New Jersey Department of Labor and Workforce Development, but rejecting *Younger* analysis and retaining jurisdiction in another case that was less far along in its proceedings.  The court held abstention was appropriate to bar federal claims by PDX North, Inc. after the state agency investigated and concluded the company had misclassified employees as independent contractors.[6]  But the court reached the opposite conclusion and rejected abstention for an intervenor in the case (SLS Delivery Services, Inc.), allowing its "nearly identical claims" to proceed in federal court where the state had only commenced its audit of the company.  *PDX N.*, 2020 WL 6192954, at *1, *5.  Citing supporting authority from five other circuits (including the Fourth Circuit decision in *Carbaugh*), it held initiation of a "formal audit" is "insufficient to serve as an ongoing judicial proceeding for *Younger* abstention purposes."  *Id.* at *9.[7]

In line with this weight of authority, PCHR's initiation of its complaint process is too preliminary to trigger *Younger* abstention.  But there is another reason why allowing the Post-Gazette's federal claim to proceed is appropriate.  Accepting jurisdiction would not disrupt the

---

[6]  The state agency had audited PDX North, found its employees were misclassified, and assessed unemployment taxes.  PDX challenged the determination before the New Jersey Office of Administrative Law, and then seven months *later* sued in federal court to block the state proceedings as unconstitutional.  *PDX N.*, 2020 WL 6192954, at *1.

[7]  The court collected cases rejecting abstention under this factor, including *Google, Inc. v. Hood*, 822 F.3d 212, 223-24 (5th Cir. 2016) ("administrative subpoena does not, without more, mandate *Younger* abstention"); *Mulholland*, 746 F.3d at 813 (ongoing election board investigation was "too preliminary a proceeding to warrant *Younger* abstention"); *Guillemard-Ginorio v. Contreras-Gómez*, 585 F.3d 508, 519 (1st Cir. 2009) ("agency's investigation … was at too preliminary a stage to constitute a 'proceeding' triggering *Younger* abstention"); *Carbaugh*, 885 F.2d at 1229 ("Where no formal enforcement action has been undertaken, any disruption of state process will be slight."); *Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316, 1321 n.2 (N.D. Fla. 2001) (civil investigative demands do not trigger *Younger* abstention), *aff'd on other grounds sub nom. Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003).

state proceeding because the merits of the Post-Gazette's constitutional claims are already being considered in a companion case, *Johnson v. PG Publishing*. The PCHR proceedings are being held in abeyance while the Court considers the Post-Gazette's motion to dismiss and the parties' arguments in that case. *See* Mot. to Dismiss, *Johnson v. PG Publ'g Co.*, No. 2:20-cv-00885-NR (W.D. Pa. Oct. 16, 2020); *see also supra* 4. In these circumstances, the Court's interest in deciding the constitutional questions presented are paramount, while the PCHR's interest in comity is diminished. Any judicial rulings will merely clarify the extent to which the state has any legal authority in this area.

### 2.     Investigating the Post-Gazette's Editorial Policies Does Not Implicate Any Important State Interest

To satisfy the next *Middlesex* factor, the PCHR proceeding must "implicate important state interests." *Middlesex*, 457 U.S. at 432. Although the PCHR Complaint is framed as an investigation into allegations of employment discrimination or retaliation, the only substantive part of the PCHR's inquiry concerns the Post-Gazette's exercise of editorial judgment. Compl. Ex. 1 ¶¶ 2-3. While the state has an interest in preventing and addressing discriminatory employment practices, it does not have a legitimate regulatory interest in managing the Post-Gazette's editorial policies and judgment because "[t]he First Amendment affords a *publisher*— not a reporter—absolute authority to shape a newspaper's content." *Ampersand Publ'g, LLC v. NLRB*, 702 F.3d 51, 56 (D.C. Cir. 2012).

This point is illustrated by the application of labor law to newspapers. There is no question that generally applicable labor laws apply to newspaper publishers, as they do to other businesses, but they cannot extend to the newspaper's editorial policies. In *Newspaper Guild of Greater Philadelphia, Local No. 10 v. NLRB*, 636 F.2d 550 (D.C. Cir. 1980), the Pottstown Mercury, a newspaper in suburban Philadelphia, had adopted a Code of Ethics (based on what is

14

now the Society of Professional Journalists Code) in order "to spell out the Mercury's standards of integrity, objectivity, and fairness, and to protect and enhance its quality and credibility." *Id*. at 555. The court held that under the National Labor Relations Act, the newspaper was required to engage in collective bargaining over aspects of the Code that affected employment conditions (*e.g*., any penalties to be imposed on employees), but the First Amendment barred any regulation that might intrude on the publisher's editorial judgment. *Id*. at 558. Such invasion would include any "interference by government with editorial content or other matters lying at the heart of a newspaper's independence." *Id*.

The court agreed with the publisher "that protection of the editorial integrity of a newspaper lies at the core of publishing control," that "credibility is central to their ultimate product and to the conduct of the enterprise" and, as a consequence, "editorial control and the ability to shield that control from outside influences are within the First Amendment's zone of protection and therefore entitled to special consideration." *Id*. at 560. Consequently, it held "a news publication must be free to establish without interference, reasonable rules designed to prevent its employees from engaging in activities which may directly compromise their standing as responsible journalists and that of the publication for which they work as a medium of integrity." *Id*. at 561.[8]

The Post-Gazette is not arguing (as the PCHR asserts) that government agencies should never be permitted to investigate allegations of race discrimination involving reporters, or that the First Amendment's "zone of protection" creates a blanket prohibition against employment

---

[8] This case presents the same issue. The Post-Gazette established and applied social media guidelines dictating that news reporters should not cover events about which they have engaged in public commentary. Compl. ¶¶ 24-26. It neutrally applied these guidelines and basic journalistic standards by assigning protest coverage only to those reporters who were not active on social media with respect to the protests. *Id*. ¶¶ 29, 40, 43.

15

discrimination cases involving news reporters.  Def. Mot. 11-12.  Nor is it arguing newspapers are entirely immunized from such claims.  Rather, the Post-Gazette is suggesting, as in the labor law cases, that the state has no legitimate interest in the newspaper's editorial policies, and that generally applicable laws cannot be construed as a way to regulate editorial judgment.

Accordingly, PCHR's assertion that "courts routinely resolve race discrimination and retaliation cases involving news reporters," Def. Mot. 11, misses the point.  All of the cases it cites involve standard employment actions, and none implicated editorial policies.[9]  Although PCHR tries to equate *Redford* with this case because there was reference to the television station's social media policy, the case involved a wrongful termination claim where a reporter argued he was fired pretextually to forestall a claim by an African American female who was fired the same day.  No issue was raised about the nature of the social media policy or the station's editorial judgment, and no First Amendment arguments were raised or addressed by the court.  None of the cases PCHR cites suggests the state has any legitimate interest in regulating or policing a news organization's editorial choices.

### 3. The PCHR Proceeding Does Not Provide an Adequate Opportunity to Raise Constitutional Defenses

The final *Middlesex* factor regarding adequate opportunity to raise constitutional defenses in state proceedings cannot be met given the nature of the constitutional interest and harm here.  Again, allowing the PCHR investigation to continue necessarily violates the Post-Gazette's

---

[9]  *See Redford v. KTBS, LLC*, 2016 WL 552960, at *1 (W.D. La. Feb. 10, 2016) (reporter was fired); *Pride v. World Publ'g Co.*, 126 F. App'x 923 (10th Cir. 2005) (reporter was fired); *Cooper v. KSHB-TV 41*, 2018 WL 8131234, at *3 (W.D. Mo. Apr. 2, 2018) (reporter was suspended and alleged she was denied promotions); *EEOC v. KOKH, LLC*, 2010 WL 3155900, at *5 (W.D. Okla. Aug. 9, 2010) (reporter alleged disparate pay, withheld pay raises, and negative performance evaluation); *Steele v. Post-Tribune Co.*, 2007 WL 2533380, at *1 (N.D. Ind. Aug. 30, 2007) (reporter alleged failure to promote); *Gray v. Viacom Broad., Inc.*, 1997 WL 508791, at *1 (D. Conn. July 11, 1997) (reporter was fired).

constitutional rights where the investigation *itself* would intrude deeply into First Amendment interests, *see supra* 9 (citing *Bursey*, 466 F.2d at 1084-85), insofar as it seeks to probe the pure exercise of editorial judgment and, notably, the bases of specific editorial decisions, under the PCHR's self-asserted authority over "personnel actions taken by [the Post-Gazette] concerning its reporters." *See supra* 6 (citing and quoting Def. Mot. 1, 11).

Objecting to that intrusion while it is happening—or, worse, being forced to wait until judicial review *after* the administrative proceeding—is not an adequate opportunity to raise the constitutional issue. "Dismissal of a complaint under the *Younger* doctrine is required only where successful defense of state … proceedings would *fully vindicate* the federal court plaintiffs' federal rights." *Fink v. Supreme Ct. of Pa.*, 651 F. Supp. 1238, 1242-43 (M.D. Pa. 1987) (emphasis added). There is no way to force PCHR to reverse time and "un-investigate" the Post-Gazette's editorial decisions, or to "un-ask" the questions it apparently intends to pose.[10] Rather, "the prospective constitutional abridgment complained of … will take place and be complete and irreversible" before the Post-Gazette can vindicate its constitutional rights. *Lee v. Winston*, 551 F. Supp. 247, 257 (E.D. Va. 1982), *aff'd in relevant part, rev'd in part*, 717 F.2d 888 (4th Cir. 1983). *See also supra* 9 (citing *Carbaugh*, 885 F.3d at 1229 ("allow[ing a] state agency to persist in conduct that is patently unconstitutional" "converts a doctrine of comity into a blanket permission for … prolonged … unconstitutional acts").

---

[10]   As noted in the Complaint, under the Commission's grant of authority, an investigation may include issuance of subpoenas, discovery into the Post-Gazette's editorial decision-making process, and the convening of public hearings, subpoenaing of witnesses, and compulsion of testimony. Compl. ¶ 55 (citing Pitts. City Code, Chapter § 653.05(b)-(c)). At the pleading stage, these allegations of the harm the Post-Gazette faces and the impact the state proceeding will have must be taken as true, even for purposes of *Younger* analyses. *See Fink*, 651 F. Supp. at 1240, 1243.

17

In fact, the Commission does not even suggest the Post-Gazette would be able to raise these constitutional concerns *during* the administrative proceeding.  Rather, all the cases PCHR string-cites on this issue stand for the proposition that opportunity to raise constitutional defenses *on judicial review* from a challenged administrative proceeding supports abstention.[11]  None of the cases address the circumstance here, where the very conduct of the administrative proceeding will irretrievably violate constitutional rights.  The Court in *Younger* itself acknowledged there may be "unusual situations calling for federal intervention" in cases sufficiently "violative of express constitutional prohibitions" that would make abstention improper, 401 U.S. at 53-54, and the Post-Gazette submits this is such a case.  As the Third Circuit noted, "[s]ince *Younger,* the Court has recognized that extraordinary circumstances may threaten irreparable injury which justifies federal intervention in ongoing state proceedings even in the absence of bad faith or harassment by state officials," including instances, such as here, where proceedings "threaten not only to do harm to … present enjoyment of rights … but to eliminate the possibility of … exercise of any federal constitutional … rights in the future." *Sullivan v. City of Pitts.*, 811 F.2d 171, 179-80 (3d Cir. 1987).

The Commission also cites two cases involving the PCHR and a newspaper the Post-Gazette later acquired in an attempt to suggest it can raise the constitutional issues in the state proceedings.  Def. Mot. 10 & n.4 (citing *Com. v. Pitts. Press Co.*, 396 A.2d 1187 (Pa. 1979); *Pitt. Press Co. v. PCHR*, 413 U.S. 376 (1973).  But like the other state cases PCHR cites, these

---

[11]  Def. Mot. 10 (citing *Prater v. City of Phila.*, 2020 WL 208928, at *3-4 (E.D. Pa. Jan. 14, 2020); *Kurowski v. City of Wash.*, 2014 WL 7213193, at *5 (W.D. Pa. Dec. 17, 2014); *Gentlemen's Retreat, Inc. v. City of Phila.*, 109 F. Supp. 2d 374, 380 (E.D .Pa. 2000), *aff'd*, 276 F.3d 577 (3d Cir. 2001); *Newcomer v. Civ. Serv. Comm'n of Fairchance Borough*, 515 A.2d 108 (Pa. Cmwlth. 1986); *City of Phila. Tax Review Bd. v. Headley*, 585 A.2d 1170, 1172 (Pa. Cmwlth. 1991)).  Actually, the two state cases do not even mention *Younger* or abstention (of any sort), nor does it appear they would have reason to, as the *Younger* doctrine pertains to *federal* courts abstaining when state proceedings are underway.  *See supra*, *passim*.

cases do not involve *Younger* or abstention.  *See supra* note 11.  The cases also say nothing about the Post-Gazette's ability to protect its First Amendment rights from violation by the very process of PCHR proceedings.

*Commonwealth v. Pittsburgh Press* involved a challenge to a provision of the state's Human Relations Act, and the PCHR's attempt to use it to force the paper to cease and desist carrying certain ads authored by third parties.  396 A.2d at 1188-89.  The conduct of the PCHR processes was not a source of constitutional violation.  Rather, that came from the statute being applied, the constitutionality of which the paper could contest.

The same is true of the U.S. Supreme Court's *Pittsburgh Press* decision arising out of the Pennsylvania state courts.  *See* 413 U.S. at 379-80.  In that case, the Court stressed that nothing in its decision could be read to "authorize any restriction whatever … on stories or commentary originated by Pittsburgh Press, its columnists, or its contributors."  *Id*. at 391.  On the contrary, the Court "reaffirm[ed] unequivocally the protection afforded to editorial judgment and to the free expression of views on these and other issues, however controversial."  *Id*.[12]  These cases are far afield from the issue of whether the Post-Gazette can adequately safeguard its First Amendment rights during – and from – the PCHR investigation that this action seeks to enjoin.[13]

---

[12]  The Court took pains to note *Pittsburgh Press* was "not a case in which the challenged law" "impairs in any significant way [the] ability to publish and distribute its newspaper."  413 U.S. at 382-83.  The same cannot be said of an inquiry designed and intended to question the ways in which the Post-Gazette assigns stories, and applies journalistic standards in doing so.

[13]  Further, even if all *Middlesex* elements are satisfied, abstention is not appropriate given that the Post-Gazette will irretrievably lose its federal constitutionally protected right not to have its editorial decisions probed by state actors should PCHR's investigation proceed.  *See*, *e.g.*, *Nat'l R.R. Passenger Corp. v. Pa. PUC*, 159 F. Supp. 2d 28, 35-36 (E.D. Pa. 2001) (citing *Olde Discount Corp. v. Tupman*, 1 F.3d 202, 212-13 (3d Cir. 2001)) (loss of right to arbitrate under Federal Arbitration Act if forced to proceed in state proceedings precluded *Younger* abstention, even though case formally satisfied each element).

## CONCLUSION

The Post-Gazette respectfully requests that the Court deny PCHR's motion to dismiss.

Respectfully Submitted,

PG PUBLISHING COMPANY and
BLOCK COMMUNICATIONS, INC.

By their attorneys,

/s/   *Robert Corn-Revere*
Robert Corn-Revere

Robert Corn-Revere (*pro hac vice*)
Ronald London (*pro hac vice*)
Courtney T. DeThomas (*pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1301 K Street NW, Suite 500 East
Washington D.C. 20005
202-973-4200
bobcornrevere@dwt.com
ronnielondon@dwt.com
courtneydethomas@dwt.com

Patrick K. Cavanaugh
**DEL SOLE CAVANAUGH STROYD LLC**
Three PPG Place, Suite 600
Pittsburgh, PA 15222
412-261-2395 (phone)
pcavanaugh@dscslaw.com

Dated: October 28, 2020.

20